Moncure, P.
delivered the opinion of the court.
This is a supersedeas to a judgment of the Circuit court of Gloucester county, affirming a judgment of the county court of said county, in favor of the plaintiffs against the defendant in that court, in an action of unlawful detainer, to recover possession of a tract of land lying in said county. The case was tried upon the general issue; and the parties, by consent, entered of record, *353 waived the right to have a jury; and thereupon the whole matter of law and fact was heard and determined, and judgment given by the court. Ho exception appears by the record to have been taken to the said judgment, or to any ruling of the court in the progress of the trial. There is copied, after the judgment of the county court, in the transcript of the record, what is certified by the clerk to be “the evidence adduced upon the trial of the foregoing case;” but it is not made a part of the record by any order or act of the court; and unless it can be .considered as made a part of the record by consent of the parties, there is certainly nothing in the case that can show any error in the judgment, and it must, of necessity, be affirmed. But in the petition to this court for a supersedeas to the judgment of the Circuit court, it is said that, “when the county court rendered, its judgment neither of the counsel for plaintiff's or defendant being present, no statement of the evidence heard at the trial was certified by the court. But a statement of all the evidence offered at the trial was written out by the counsel for the plaintiff's, signed by him, the counsel for Dobson, and the judge of 1 he court, and presented and used by the parties at the hearing before the Circuit court, and is now with the record of the case, as used before the Circuit court.” And in the argument of the case before this court, no objection was made to the correctness of what is said in the petition as aforesaid, but the said statement of the evidence was treated by the counsel on both sides as being properly a part of the record. However irregular this may be, we must, therefore, consider the case, as if a bill of exceptions had been taken to the judgment of the County court, and the said evidence had been set out and certified in said bill. So considering the case, we have now to enquire, whether there be any error in the judgment.
*354 . Before we enter unon this enquiry we will notice an agreement signed.' by the parties by their counsel, and placed by them, with their notes of argument, in the hands of the court to be acted upon as we might think Pr0Per- That agreement is in these words: “We the undersigned counsel for appellant and appellees, in Dodson v. Culpepper wife, agree, and request, that in the event the court shall reverse the decision of the Circuit court below, on the point that the- action is brought by the wrong parties, the court shall decide all the points in the case upon the merits of the case. We do this from the fact, that the subject matter is small, and that the pecuniary circumstances of our clients are such as to illy afford farther costs in the premises.” We will comply with this request; but in doing so will first consider the case upon the merits; that is, whether the defendant in the court below, who is the plaintiff in error here, Dobson, is entitled to the possession of the property in controversy ; and if not, then, secondly, whether the plaintiffs in the - court below, who are the defendants in error here, Culpepper and wife, are entitled to such possession, or rather were so entitled when the action was brought. . If Dob-son be not so entitled, then Culpepper and wife, with • whom or with one of whom, Culpepper, Dobson made a contract to purchase the land in controversy, on the. 28th day.of December 1860, are entitled, unless they lost their title . by reason of the deed of gift made by them for the land to Walter T. Simcoe, dated the 81st day of August .1869, and constituting a part of the evidence in-the case; the said Dobson contending that if he is not entitled, then the said Simcoe is entitled by virtue of - the said deed of gift, and not the said Culpepper and wife. Then we proceed to enquire : , .
First: Is the said Dobson entitled to the possession of the said land % .....
*355 On the 28th day of December 1860, Dobson contracted with Culpepper to purchase the said land of them at the price of $275, of which the sum of $80 was payable in cash, and the balance, $195, twelve months after date; and on the same day, Culpepper and wife executed a receipt to Dobson for the $80, the cash payment, and for his note at twelve months for the said balance of $195; about the same time, it seems, Dobson received possession of the land, and has been in possession of it ever since, but has never received any deed for it. Culpepper and wife, not having, as he says, received any part of the purchase money from Dobson for the land, not even the cash payment of $80, made a formal demand upon him for possession, in July 1870, which possession he, Dob-son, refused to deliver, and he has held the laud adversely to the claim of Culpepper and wife ever since. On the 1st day of April 1872, they brought this action of unlawful detainer against him for the land.
There can be no doubt, and it is not controverted, but indeed admitted, by the counsel for Dobson, that either Culpepper and wife or their donee Simcoeare entitled to recover the said land of him in an action of unlawful detainer, unless at the time of the biinging of such action there had been such payment or performance of what was contracted to be paid or performed on the part of the vendee, as would in equity entitle him, or those claiming under him, to a conveyau ce of the legal title of such land from the vendors, or those claiming under them, without condition, according to the Code of 1860, chapter 135, section 20. That provision of the Code is containe d in the chapter concerning the action of ejectment; but it is not confined to that action, either in its literal terms, or its substantial meaning. It applies, as well to the action of unlawful detainer, as to the action of ejectment, which are concurrent remedies in such a case as this. Williamson, *356 trustee, v. Paxton trustee, 18 Gratt. 475, 505. A vendor of land who had put the purchaser in possession, whilst the contract remains executory has the legal title as to purchaser; and unless the said provision of the appty f° the ease, may demand possession of the purchaser, and recover it of him by an action of ejectment or unlawful detainer; at least, unless, since the date of the purchase, the interest of the vendor in the land has terminated, or been transferred by him to another. That the vendor may recover possession of the land in an action of ejectment in such a case is clearly shown by the case Burnett v. Caldwell, 9 Wall. U. S. R. 290; and the case just cited from 18 Gratt., shows that there is no difference between ejectment and unlawful detainer in this respect. Whether such subsequent transfer would destroy the right of such recovery by the vendor himself, is a question to be hereafter considered.
But it is contended in behalf of Dobson in this case, that there has been such payment or performance, or at least a tender or offer of such payment or performance, of what was contracted to be paid or performed on his part, as would, in equity, entitle him to a conveyance of the legal title of the land from the vendors or those claiming uuder them without condition; and that therefore there can, according to the aforesaid provision of the Code, be no recovery of the land against him at law any more than in equity, by the vendors or any claiming under them. On the other hand it is contended by Culpepper and wife that no part of the purchase money has ever, in fact, been paid by Dobson. How stands the case upon the record ?
If we regard this case as upon evidence embodied in a bill of exceptions to the judgment of the court below, which is the most favorable view that can be taken of it for the plaintiff in error, Dobson, we must consider it *357 as upon a demurrer by him to the evidence; and so must regard as true all the evidence that is against him, and disregard all the evidence that is in conflict therewith. In that view of the case, we must regard as true the evidence of Culpepper himself, who proves that not a dollar of the purchase money has ever been paid, but on the contrary that Dobson yet owes him, in addition to the purchase money of the land, (considering the contract as still in force,) $70, the. amount of two notes of Dobson which were transferred to him. He says: “ The understanding of all the parties to the contract was, that Mr. Dobson was to pay for the tract of land in twelve months; and if he failed to pay for it in twelve months, he was to be considered a renter from the expiration of-the twelve months, at the sum of $40 per year. He, the witness, further says that no money was paid to him or his wife by Dobson, at the time of the purchase; that he and his wife agreed to take a lot of furniture valued at $125, in part payment of the purchase money, which said lot of furniture was to be delivered to them in a few days, but has never been delivered. According to this evidence, Dobson is not only not entitled to the land in law or equity, but is largely indebted to Culpepper and wife for rents and otherwise.
But evenflf we regard the evidence of Dobson himself, which is directly in conflict with the evidence of Culpepper, and with other evidence in the case, it certainly does not show full payment of the purchase money, or even payment of any pai't of it, except the cash payment of the $80 mentioned in the receipt, and $75 which he says he let Mrs. Culpepper have in 1864, while her husband was from home, and in the Confederate lines. This $75 was no doubt Confederate money, and worth little or nothing. The witness further says, that he had become security for the plaintiff, Z. Culpepper, in a bond *358 to-Mrs. Williamson, on wliieli bond a judgment Was' recovered on the 15th of January 1866, for $137 with' from the 29th day of April 1861 till paid, and costs $6 72; that he would not pay the whole of the pur°^a®e money for the tenement in controversy, while that judgment was unpaid; hut he had offered, if plaintiffs would consent for him to settle the judgment out of what he owed for “ Cuba,” he would pay the balance ; which offer, plaintiffs refused to accept. That he, the defendant, had agreed to let plaintiffs have some furniture, hut before he -could deliver it, the war commenced, and thereby he was prevented from delivering it. The defendant further stated on cross examination, that after the 5th of March 1869, the date of a certain deed made by him, he became an involuntary bankrupt; that he did not name the tenement in controversy in the schedule of property rendered by him in the court of bankruptcy; that his assignee in bankruptcy had not claimed the said tenement; and that he, the defendant, had received a discharge under the bankrupt law of the United States The defendant does not pretend that he ever paid a dollar of the debt for which he says he became bound as surety as aforesaid; and having received his discharge as a bankrupt, he can never have it to pay. His omission of any reference to “the land in his schedule,' seems to be a disclaimer by him of any interest therein. This evidence of the defendant, if taken alone and fully credited, would certainly make' out no title in him, in law or equity, to the land, and shows that he would be found to be indebted to the plaintiffs on a' settlement of all accounts between them in regard to the land.
The other evidence in the case tends rather to support the evidence of Culpepper than that of Hobson, and to show that nothing was ever paid by Hobson for the land *359 but $75 in Confederate money, worth little or nothing, and perhaps two bottles of brandy, which he let Mrs. Culpepper have in 1864, during the absence of her husband. John T. Daniels, who wrote and witnessed the - contract, says he saw no money pass ; and from the evi-. dence of John S. Stubbs, the counsel for Dobson, it appears probable that the $80 mentioned in the receipt as having been paid, was not in fact paid, but was intended to be paid in furniture, which Dobson himself admits was never delivered.
The merits of this case, therefore, are clearly against the plaintiff in error, Dobson, who has no title to the land in law or equity. And the only remaining question is, whether this action was brought by the wrong parties, in being brought by Culpepper and wife, the vendors of Dobson, instead of being brought by Simcoe, their p donee.
We have no doubt but that this action was brought, as it certainly was prosecuted, with the knowledge and perhaps the assent, and for the benefit of Simcoe. He was a witness for the plaintiffs in the action, gave testimony in support of their claim, and set up none for himself. It is not pretended by Dobson that he ever paid any rent to Simcoe for the land, or that Simcoe ever claimed any rent of him. Under these circumstances we would be very glad to be able to affirm the judgments of the County and Circuit Courts in this case, instead of reversing them upon a mere technicality, when the merits of the case are so clearly against the plaintiff in error. But we must follow the law, whithersoever it goeth,^and even though it lead us to apparent injustice and hardship. What, then, is the law on the subject?
There is no rule of law better settled than that a tenant is estopped from disputing his landlord’s title ; and. as a general rule, he is bound to surrender possession at *360 the end of his term to his landlord. Ko matter how destitute of title the landlord may be, or how clear the title of a stranger may be in the land, the tenant cannot deny the title of the former, nor affirm that of the latter, in his defence to the landlord’s action for the land. Ko reference to authority on this subject can be necessary. The same principle applies to the relation of vendor and vendee. The latter is estopped from denying the title of the former in an action at law to recover possession of the subject of the sale. This principle is not denied, nor is its application to the case of vendor and vendee; and it would be very clear in this case that if the plaintiff in error be not entitled to the land, the defendants in error are entitled to 'recover it of him in this action, unless they are deprived of that right by means of the deed of gift to Simcoe, before mentioned. The question is not, whether that deed confei’s a right of action on Simcoe, to recover possession of the land, but whether it takes away the right of Simcoe’s donors to recover such possession. Two persons may each have a right to recover possession of the same land. The lessor always has a right to recover it of his lessee, at the end of the term, even though the lessor has not a shadow of title. But that does not affect the right of the real owner to recover it. If the real owner recovers it of the lessee, before the lessor does, that recovery of course discharges the lessee from the lessor’s right of action.
But the question is, whether this right of the lessor or vendor to recover possession of the property does not cease when he conveys away his title to another? Whether the estoppel of the lessee or vendee, to set up title in a stranger, as a defence to the action of the lessor or vendor, applies to the title of a person to whom the lessor or vendor may have conveyed his interest in the subject, after making the lease or contract of sale.
*361 Although a tenant “cannot show that his lessor had no title to the premises when the tenancy commenced, he may show that the landlord holds in violation of the laws of the State, or that Ms interest has since expired, or that he has sold and conveyed the land, or that he has been evicted by title paramount; and that, therefore, he has no right to bring the suit.” Thus is the law laid down in Taylor’s Landlord and Tenant, § 707; and the authorities cited in the notes to that section fully sustain the author. See also Adams on Ejectment, ed. of 1854, p. 315, marg. 276, and notes. In 3 Saund. Ilep. p. 418, it is said in note e, that “ the rule is now settled, that though the tenant cannot deny that the person by whom he was let into possession had title at that time, he may show that such title is determined.” Gravenor v. Woodhouse, 1 Bing. 38, 8 Eng. C. L. R. 235; Hopcraft v. Keys, 9 Bing. 613, 23 Eng. C. L. R. 399: Doe v. Edwards, 5 B. & Ad. 1065, 27 Eng. C. L. R. 268. In the last case it was held by the court of King’s Bench, that “in ejectment by a landlord for forfeiture, it is a good defence that the landlord, after the execution of the lease, conveyed away his title to the premises by a mortgage; although it be not shown that any interest in the mortgage is in arrear, or that the mortgagee has made any claim, or otherwise enforced his rights as against either landlord or tenant.” Patterson J. said: My brother Parke thinks that the tenant was entitled to make this defence, because, in doing so, he did not set up any thing adverse to the right of his landlord to grant the lease, but merely showed that he had parted with his title subsequently. See Pope v. Biggs, 9 B. & C. 245, 17 Eng. C. L. R. 368. And Denman G. J. said: “"We agree with my Brother Parke, that he (the lessor) cannot, after this, recover for a forfeiture.” See also Syburn's lessee v. Slade, *362 4 T. R. 682; 16 Eng. C. L. R. 409; Doe v. Barton, 11 Ad. & El. 307, 39 Eng. C. L. R. 97; Downs v Cooper, 2 & El. N. S. 256, 42 Eng. C. L. R. 663; and Doe v. Watson, 2 Stark R. 230,3 Eng. C. L. R. 328. In this last case’ Lord Ellenborough, C. J., allowed the defendant in ejectment to show that his landlord, pending the term, sold his interest in the premises; his lordship saying that the defence was not inconsistent with the admission of the landlord’s title by the defendant, during the time for which he paid rent. This decision seems to be rather adverse to another nisi prim decision of the same judge, made eight years before; Balls v. Westwood, 2 Camp. 11; in which very strong language was used by-him, in denying the right of a tenant to dispute the title of his landlord. But that case must stand upon its peculiar circumstances, if it can stand at all, and certainly can be of little weight against the uniform current of authority in favor of the right of the tenant to show that his landlord’s title has expired, or been conveyed away by him since the date of the lease. The American authorities run in the same channel with the English on this subject. 1 A. K. Marshall 99, 1 K’y Rep. 73; Binney v. Chapman, 5 Pick. R. 124; Jackson v. Johnson, 5 Cow. R. 75; Jackson v. Rowland, 6 Wend. R. 666; Den v. Ashmore, 2 Zabriskie’s R. 261; and Tilghman, &c. v. Little, 13 Ill. R. 239, are some of the cases. There seems to be no conflict among them. We have no direct decision • of this court on the subject; but in Miller v. Williams, 15 Gratt. 213-219, the law was admitted to be as above stated, and some of the authorities were cited in support of it.
If the defendant, in the court below, can be considered as having been in adverse possession of the land, . when the deed was made by the plaintifts to Simeoe, still that deed was operative under the Code, ch. 116, § 5, *363 and transferred to Mm their right of entry and action. ° Carrington v. Goddin, 13 Gratt. 587, 600.
We are, therefore, brought to the conclusion, reluctantly so far as this case is concerned, that it is a competent defence for the defendant in this case to show, that since his contract of purchase from -the plaintiffs, they have conveyed the land in controversy, by deed of gift to Simeoe, the son of the 'female plaintiff, and that this action ought to have been in his name instead of theirs. On principle, the authorities referred to seem to be sound. The lessee or vendee does not dispute the title of his lessor or vendor, in showing that the former has conveyed his title to another since the lease or the contract of sale; but thereby rather confirms that title. The benefit of the estoppel created by the lease or the contract of sale, is not destroyed, but merely transferred by the lessor’s or vendor’s own act from him to his assignee; and the lessee or vendee can thereafter no more dispute the title of such assignee than he could before dispute the title of the lessor or vendor. The former flows from the latter, and is in effect the same title. The principle is, that to maintain ejectment or unlawful detainer for land, the plaintiff' must have the legal title to the possession of the land. Where the relation of landlord and tenant, or vendor and vendee exists between the parties, the defendant is estopped from denying the plaintiff’s title, which stands in the stead of proof of such title, indeed conclusive proof of it. But when the lessor or vendor, after the lease or contract of sale, conveys his title to another, he loses the benefit of the estoppel, or rather transfers it to his assignee. In the language of Lord Denman in Downs v. Cooper, supra, he is estopped by his conveyance from claiming the benefit of the estoppel arising from the lease or contract of sale. There is no necessity for an attornment to perfect *364 the right of the assignee in such case. It is rendered unnecessary in England by the statute of 11 Geo. II. c. 19, and in this State by the Code, ch. 138 § 3, p. 617.
We are therefore of opinion that the judgments of the Circuit and County courts are both erroneous, and must be reversed and annulled, and judgment rendered in lieu thereof, for the plaintiff in error.
The judgment was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the merits of this case arfe against the plaintiff'in error, who is not entitled to the land in controversy nor the possession thereof. But the court is further of opinion, that this action was brought by, or in the names of the wrong parties; having been brought in the names of the defendants in error, Culpepper and wife, instead of the name of Walter T. Simcoe, to whom they conveyed the said land by deed dated the 31st day of August 1869, and copied in the record, and who thereby became entitled to the said land and the possession thereof, and to sue for and recover the same in his name.
Therefore it is considered by the court, that the said judgments of the said Circuit and county courts are erroneous, and that the same be reversed and annulled, and that the plaintiff in error recover against the defendants in error his costs by him expended in the prosecution of his writs of supersedeas here and in the said Circuit court. And this court proceeding to render such judgment as the said county court ought to have rendered, it is further considered by the court upon the whole matter of law and fact, that the said defendants in error take nothing by their bill, but for their false clamor he in mercy, &c.; and that the plaintiff in error go thereof *365 ■without day aud recover against the defendants in error his costs by him about his defence in the said county court expended, which is ordered to be certified to the said Circuit court of Gloucester county.
Judgment reversed.